UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL WALCZAK, | ) Case No. 9:23-CR-80024 |
| | ) |
| Defendant. | ) |
| | ) |

**STIPULATED FACTUAL BASIS**

By signing below, the parties stipulate to and agree not to contest the following facts and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty to willful failure to pay trust fund taxes, in violation of 26 United States Code, Section 7202, and failure to file a personal income tax return, in violation of Title 26, United States Code, Section 7203.

1. PAUL WALCZAK was a resident of Palm Beach Gardens, Florida, within the Southern District of Florida.

2. From at least April 2009 to in or about July 2019, WALCZAK controlled a web of interconnected healthcare companies, including entities called NuVista, Palm Health Partners, FW Healthcare Investors, and PHP Employments Services ("PHPES") (collectively referred to hereinafter as "the PHP network"). Ownership of the PHP network was divided between WALCZAK and various investors through a variety of holding companies, however, WALCZAK had sole operational control of the business.

3. PHPES was a Florida limited liability company located in Palm Beach Gardens, Florida, within the Southern District of Florida. All of the employees who worked for the PHP

network were employed through PHPES.  At its peak, PHPES employed over 600 people and paid over $6 million per quarter in payroll.

## Payroll Taxes

4. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the federal tax laws of the United States.

5. The Federal Insurance Contribution Act ("FICA") required employers to withhold Medicare and Social Security taxes from their employees' wages.  The Internal Revenue Code also required employers to withhold federal income taxes from their employees' wages.  Employers, who held these taxes in trust for the United States, were required to pay them over to the IRS on behalf of their employees.  Collectively, these withheld taxes are often referred to as "trust fund taxes."  An individual with the obligation to collect, account for, and pay over withheld trust fund taxes to the government is called a "responsible person."  In addition to trust fund taxes, employers are also required to "match" their employees' FICA taxes.  Together, the employees' portion (i.e., trust fund taxes) and the employers' portion (the matching FICA taxes) are collectively referred to as "employment taxes."

6. For employers whose annual liability for trust fund taxes was greater than $1,000, responsible persons were required to report the employment taxes due for the employer on a Form 941, Employer's Quarterly Federal Tax Return ("Form 941") on a quarterly basis.  The Form 941 was due at the end of the month following the end of each calendar quarter and reported the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of employment taxes due, and the total tax deposits the employer made with the IRS.

7. A "responsible person" for the purposes of employment taxes was the person or persons with the status, duty, or authority at the employer to assure the withholding and accounting of employment taxes.

8. When the IRS determined that a responsible person at an employer has willfully failed to pay over trust fund taxes, the IRS could assess the trust fund portion of the taxes against that person individually, so that they are personally liable for paying them. The IRS could do this through a penalty called the Trust Fund Recovery Penalty ("TFRP"). If the responsible person did not pay the TFRP voluntarily, the IRS could issue liens and levies on the responsible person's assets.

### WALCZAK's Pre-2016 Failure to Fully Pay Payroll Taxes at PHPES

9. From at least 2012 through July 2019, WALCZAK exercised ultimate control over the PHP network's financial affairs and operations. WALCZAK determined how and when money flowed from the revenue generating entities to the other entities, and from those entities to the PHP network's employees, investors, and creditors. Thus, WALCZAK was a responsible person for the payment of trust fund taxes at PHPES, that is, he had the responsibility to collect, truthfully account for on Forms 941, and pay over to the IRS on behalf of PHPES the trust fund taxes withheld from its employees' pay.

10. WALCZAK first stopped fully paying the payroll taxes for PHPES in 2011. Beginning in or around February 2012, the IRS initiated collection efforts to recover unpaid trust fund taxes owed by PHPES. These efforts included meeting with WALCZAK, issuing notices about failures to pay and possibilities of levies and liens, and other attempts to get PHPES current on payments. In August 2014, because WALCZAK had not come into compliance voluntarily, the IRS assessed him with a Trust Fund Recovery Penalty. Following this, WALCZAK fully paid the assessments against PHPES in or about October 2014.

11. However, by the fourth quarter of 2015, WALCZAK was again failing to pay PHPES's payroll taxes.

### WALCZAK'S Failure to Pay Payroll Taxes During the Charged Period

12. From January 2016 through September 2016, WALCZAK made no federal tax deposits for PHPES's payroll taxes. Throughout this time period, WALCZAK withheld the trust fund taxes from the pay of PHPES's employees under the pretext of paying over these funds to the IRS. During this time frame, WALCZAK used over $1 million from a PHP network bank account for the purchase of $2.025 million dollar yacht; transferred hundreds of thousands to himself in addition to his $360,000 salary; and used PHP network bank accounts for personal spending at retailers such as Bergdorf Goodman, Cartier, and Saks.

13. On September 20, 2016, WALCZAK was interviewed by an IRS Revenue Officer to determine whether the IRS should assess him with a TFRP personally. WALCZAK acknowledged that he controlled financial policy for PHPES, directed the payment of bills, reviewed the payroll tax returns, knew the withholdings were not being paid, and was the only individual at PHPES who had that level of control. The IRS began taking involuntary collection actions against PHPES and proposed TFRPs against WALCZAK personally.

14. Following this, WALCZAK began negotiating an agreement with the IRS to pay off past liabilities he had accrued by failing to pay payroll taxes at PHPES. The IRS conditioned any agreement on WALCZAK staying current on PHPES's payroll taxes which he did from September 2016 through July 2017.

15. In August 2017, WALCZAK again stopped paying payroll taxes at PHPES and made no federal tax deposits until April 2018. Throughout this period WALCZAK continued to transfer hundreds of thousands of dollars to himself from a PHP network bank account; use the business's accounts for personal expenses; and pay his salary.

16. In March 2018, WALCZAK was again interviewed by an IRS Revenue Officer to determine whether the IRS should assess him with TFRPs personally. WALCZAK again acknowledged that he controlled financial policy for PHPES, directed the payment of bills, reviewed the payroll tax returns, knew the withholdings were not being paid, and was the only individual at PHPES who had that level of control. The IRS again began taking involuntary collection actions against PHPES and proposed TFRPs against WALCZAK personally.

17. WALCZAK made partial payments of PHPES's payroll tax liabilities for the second and third quarters of 2018 and the first quarter of 2019. WALCZAK made no federal tax deposits in the fourth quarter of 2018 and the second quarter of 2019.

18. Between 2016 and 2019, as detailed in Attachment A, WALCZAK willfully failed to pay $7,432,223.80 in trust fund taxes withheld from the pay of PHPES employees. Over the same period, PHPES failed to pay $3,480,111.00 in the employer payroll tax contribution.

19. Between 2016 and 2019, WALCZAK transferred over $2.5 million to himself from PHP network bank accounts, paid himself over $1.1 million in salary, transferred over $1 million from a PHP network bank account to a third party to purchase a yacht, and used PHP network bank accounts to pay for personal expenses and travel.

**WALCZAK'S FAILURE TO FILE PERSONAL INCOME TAX RETURNS**

20. By 2019, the IRS had assessed millions of dollars of TFRPs against WALCZAK. Beginning with tax year 2018, WALCZAK stopped filing personal income tax returns.

21. In 2018, WALCZAK received a $360,000 salary from PHPES and over $450,000 in transfers from PHP network bank accounts.

22. In 2019, WALCZAK caused the creation of a new business, NextEra Health Systems, LLC ("NextEra"). WALCZAK used his then twenty-year old daughter as the 99%

5

nominal owner of NextEra. In reality, WALCZAK had ultimate control of the finances and operations of NextEra, and WALCZAK's daughter was a full-time college student.

23. In 2019, WALCZAK received a partial salary from PHPES, over $40,000 in transfers from bank accounts in the PHP network, and over $25,000 from NextEra to a bank account he controlled in his daughter's name.

24. In 2020, WALCZAK received from NextEra just under $200,000 to the bank account in his daughter's name, over $225,000 to a bank account in his wife's name, and over $800,000 in payments directly to third parties for WALCZAK's personal expenses, including clothing stores, department stores, and fishing retailers. NextEra's internal financial records categorized these payments to third parties as WALCZAK's consulting fees.

25. For each of these years, WALCZAK's gross income exceeded the minimum gross income thresholds requiring the filing of personal income tax returns.

26. The defendant is aware of and understands the nature of the charges to which he is pleading guilty and understands that had it proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt:

**Count Four:**     Title 26, United States Code, Section 7202

    (1) The Defendant had the duty to collect, truthfully account for, and pay over a tax;

    (2) The Defendant failed to collect, truthfully account for, or pay over the tax; and

    (3) The Defendant acted willfully.

**Count Thirteen:**     Title 26, United States Code, Section 7203

    (1) The Defendant was a person required to file a return;

    (2) The Defendant failed to file at the time required by law; and

    (3) The failure to file was willful.

To prove the Defendant acted willfully, the government must show that the Defendant voluntarily and intentionally violated a known legal duty.

The defendant and his attorney agree that the facts recited above meet these elements.

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

Dated: 10/11/24

BRIAN FLANAGAN
ASHLEY STEIN
ANDREW ASCENCIO
Trial Attorneys
U.S. Department of Justice, Tax Division

Dated: 10 · 11 · 24

PAUL WALCZAK
Defendant

Dated: 10/11/24

RAYMOND GRANGER
Attorney for the Defendant

Dated: 10/11/24

RICHARD LEVITT
Attorney for the Defendant

Dated: 10/11/24

DENNIS KAINEN
Attorney for the Defendant

## ATTACHMENT A

| Count | Quarter | Total Tax (Employee Portion) | Timely Payments Made | (Employee Portion) Due & Owing by Due Date | (Employer Portion) Due & Owing | Total Tax (All) Due & Owing by Due Date |
|---|---|---|---|---|---|---|
| 1 | 201603 | $ 1,012,960.38 | $ - | $ 1,012,960.38 | $ 401,457.41 | $ 1,414,417.79 |
| 2 | 201606 | $ 1,238,279.75 | $ - | $ 1,238,279.75 | $ 485,109.63 | $ 1,723,389.38 |
| 3 | 201609 | $ 1,238,628.12 | $ - | $ 1,238,628.12 | $ 478,623.42 | $ 1,717,251.54 |
| 4 | 201709 | $ 1,255,358.62 | $ - | $ 1,255,358.62 | $ 485,534.80 | $ 1,740,893.42 |
| 5 | 201712 | $ 1,072,453.97 | $ - | $ 1,072,453.97 | $ 406,823.67 | $ 1,479,277.64 |
| 6 | 201803 | $ 831,485.47 | $ 118,097.27 | $ 713,388.20 | $ 351,773.76 | $ 1,065,161.96 |
| 7 | 201809 | $ 675,159.08 | $ 440,139.72 | $ 235,019.36 | $ 296,912.41 | $ 531,931.77 |
| 8 | 201812 | $ 587,423.36 | $ - | $ 587,423.36 | $ 251,809.87 | $ 839,233.23 |
| 9 | 201903 | $ 670,609.68 | $ 639,524.85 | $ 31,084.83 | $ 297,750.79 | $ 328,835.62 |
| 10 | 201906 | $ 47,627.21 | $ - | $ 47,627.21 | $ 24,315.24 | $ 71,942.45 |
| **TOTAL** | | **$8,629,985.64** | **$1,197,761.84** | **$ 7,432,223.80** | **$ 3,480,111.00** | **$ 10,912,334.80** |

## ATTACHMENT B

| Count | Quarter | Outstanding Employee Portion | Outstanding Employer Portion | Total Restitution |
|---|---|---|---|---|
| 1 | 201603 | | $401,457.41 | |
| 2 | 201606 | | $485,109.63 | |
| 3 | 201609 | | $478,623.42 | |
| 4 | 201709 | | $485,534.80 | |
| 5 | 201712 | | $406,823.67 | |
| 6 | 201803 | | $351,773.76 | |
| 7 | 201809 | $235,019.36 | $296,912.41 | |
| 8 | 201812 | $587,423.36 | $251,809.87 | |
| 9 | 201903 | $31,084.83 | $297,750.79 | |
| 10 | 201906 | $47,627.21 | $24,315.24 | |
| TOTAL | | $901,154.76 | $3,480,111.00 | $4,381,265.76 |