## AFFIDAVIT OF JON GALLEGOS

1.      I am the CFO for City Mobile Group, LLC ("CMG") and have been with the organization for approximately the past five years. I have a master's degree in electrical and computer engineering, and am an alumnus of the Harvard Business School.

2.      CMG operates as a health care staffing firm which provides contingent healthcare staff to organizations such as long-term care facilities. CMG generally accomplishes this through providing travel and local clinicians. CMG is a Small and Midsize Enterprise (SME) staffing nation-wide with capabilities to staff in all 50 states.

3.      In February 2023, CMG began staffing a healthcare facility in New Mexico called Princeton Place Nursing and Rehabilitation ("Princeton Place"), which was a DBA for a facility called WW Healthcare, LLC ("WW") which was also being portrayed as Onpointe. It was owned by two individuals Horace Winchester ("Winchester") and Jerry Williamson ("Williamson") and managed with the support of Management MCOA LLC ("MCOA") and at least one of their directors Paul Walczak ("Walczak").

4.      Princeton Place was frequently late or slow on payments to CMG. It is not uncommon for there to be an initial delay getting the first invoices paid when starting to support a new facility and especially a large facility.  Princeton Place was a very large facility, and large facilities tend to have larger infrastructures that require additional work finding the correct Point of Contact to pay invoices which typically results in initial payment delays. However, at least in approximately October 2023, red flags were going off to CMG about the continued slow payment from Princeton Place.

5.      In approximately November 2023, I visited Princeton Place and met its administrator. Previously, I had noticed line items on invoices referencing an entity called,

Management MCOA LLC ("MCOA") as well as a single line item of an invoice refencing "PureHealth" referencing back to an invoice due in March 2023. I asked the administrator for Princeton Place, who MCOA was as well as the status of our outstanding invoices. The administrator was non-committal in his answer and surprised I had the name of that entity. When I asked for the contact information of the correct point of contact on our outstanding invoices he merely said he would submit an email to two individuals in Florida who were processing all the invoices for Princeton Place. Searching online records later, it indicated that MCOA was registered in Florida. The administrator also indicated PureHealth already had a senior member of PureHealth with an office onsite already and that PureHealth were likely purchasing the facility but he did not know when. In May 2024, a member of MCOA disclosed to me that their organization had been processing the invoices for CMG at Princeton Place in 2023.

6. By the end of 2023, CMG was owed approximately $2 million by Princeton Place. Princeton Place was sending small payments relative to the amount owed to CMG to keep CMG off their back.

7. Princeton Place ownership called me after receiving a letter I sent to multiple entities about the money owed and represented there would be enough money at the closing of the sale of Princeton Place to PureHealth (the purchaser) to pay the outstanding balance owed to CMG and that ownership had been strategizing with the purchaser. It was specifically stated the funds were being withheld out of the sales price for CMG at the closing. This was the sole reason CMG did not stop providing services to Princeton Place.

8. The purchase of Princeton Place by PureHealth was finalized on or about February 1, 2024. The transfer(s) occurred through a series of entities including companies

called 369 Albuquerque Ops, LLC ("Opco"), 500 Albuquerque RE, LLC ("Propco"), Management MCOA, LLC ("Manco") and NE Health Systems, LLC ("NE Health").

9. On February 2, 2024 a representative of PureHealth that Walczak would later describe as the facility CEO on February 7, 2024 agreed in writing to continue operating under the previous Princeton Place staffing agreement until a new agreement was put in place so that City Mobile would continue staffing at the facility after the purchase. That individual had reached out days prior to the sale to discuss our continued services post close. It is my understanding he was the same individual that had the office from PureHealth that the Administrator described in November 2023.

10. On February 2, 2024 I sent an email to the selling ownership asking if the wire had been sent as CMG had not received the promised funds. Ownership responded on February 5, 2024 that funding has not occurred but wanted me to join to "discuss with the new owner, 'Paul'" on February 7, 2024.

11. I spoke to Walczak for the first time on February 7, 2024. During that conversation, Walczak represented himself as a director of PureHealth. Prior to the sale, I had no knowledge of Walczak. I was aware of MCOA as an entity but not entirely sure what they did at that time fully due to never directly interacting with them. I was not aware of any relationship between Walczak and MCOA prior to the sale.

12. On February 7, 2024, Walczak personally requested that CMG keep providing services to Princeton Place now under the ownership of PureHealth and that CMG have confidence in the relationship with the facility operators. Walczak additionally represented that the funds that were to be used to pay CMG for past services from the sale were under reconciliation and would be released to CMG soon but agreed when I recapped the conversation

there was a full closing (Walczak did not give any indication that CMG would receive anything less than the full amount owed). Walczak stated that the expected sign off on the reconciliation was expected to be end of this week (Week of February 7, 2023) or beginning of the next week. To ensure there was no confusion, I specifically reiterated CMG should expect to receive the closing funds this week or next week and Walczak directly told me he thought that was accurate. He stated that he was a "director, a board director" and Winchester had previously emailed me that Walczak was the new owner so I felt CMG could trust the authority from this commitment. Walczak stated that the organization had 12 facilities now and they acquired the full Propco and Opco for all facilities. Walczak directly stated he viewed CMG as payroll so we would be paid every two weeks. No reconciliation funds were ever released by Walczak.

13. Through contact with a representative of MCOA about the organization's hierarchy, it was described that Walczak was at the very top and they weren't exactly sure his title. I asked if he was the co-CEO and/or on the board and they indicated it was something like that.

14. On February 16, 2024 Winchester called me saying he had not heard back from Walczak and stated that Walczak "controls the cash right now".

15. On February 26, 2024 Winchester called and said he did not have any cash because it was tied up waiting for Walczak to finish the reconciliation. Winchester immediately transitioned stating what he really wanted to talk to me about was he knew I had an attorney (despite me never revealing I had one at that time) and said he thought I would sue everyone including Walczak and asked me to "forbear" because "your position doesn't deteriorate by waiting".

16. On March 4, 2024 Winchester called me saying he just spoke with Walczak and

Walczak was flying into Dallas that day and they were meeting in person tomorrow (March 5, 2024) so Winchester expected to have an update Wednesday-ish. I asked what the holdup was from even getting a partial payment from Walczak and Winchester told me "Paul", stating "that is what we were supposed to be doing, and he just hasn't gotten to it, so that's all we're waiting on, is him."

17. On March 14th, 2024 Winchester sent me Walczak's contact card when I requested it. It revealed Walczak's phone number and that Walczak had an MCOA email address. Walczak called me directly on March 15, 2024 unscheduled.

18. In March 2024 I had communications with Walczak in which Walczak indicated the reconciliation funds could soon be released to pay CMG by the end of March 2024. This occurred on phone conversations as well as was reiterated over text message. Walczak never denied or gave CMG any indication he would not send the approximately $2M owed through this time. For example, on March 28, 2024 I followed up in writing inquiring that Walczak still held the approximately $2 million earmarked for CMG based on services CMG provided before the sale that was discussed on March 15, 2024. Like the phone call, Walczak did not deny or correct any information. The next response Walczak had in the text message chain on April 5, 2024 were two "thumbs up" emoji. CMG never received these funds from Princeton Place or Walczak.

19. During the conversations for the reconciliation funds status, Walczak admitted personally that they had been running Princeton Place's operational level management and day to day operations for 14 months prior to the sale (he did not specify a specific date). Walczak also reiterated CMG would be paid every two weeks for the new services being provided, and CMG was already setup for these payments.

20. On May 1, 2024 Walczak called me and said he would call me tomorrow with the amount PureHealth would pay CMG that week (as part of the payroll every 2-week payment process).

21. On May 2, 2024, Walczak stated that he was unable to pay on the schedule he previously committed to (for new services rendered) because he was unable to obtain the $1 million dollars he was expecting. He asked to delay the payment until next week but said he was planning to make 3 payments in May because it's a 3-period payroll month. I asked him to provide evidence to support this delay of receiving funds and he agreed to provide the documentation – this was re-capped in an email to him to provide the documentation that afternoon, but he never attempted to provide any such evidence. CMG did not receive that payment or any of the 3 payments Walczak warranted CMG would receive in the month. CMG only received three total payments (in March and April 2024) from Walczak and PureHealth for new services after the fraudulent transfer and then never received a payment again.

22. Between May 3 and May 17, 2024 Walczak ignored all communication requests on payment status. Walczak texted on May 20, 2024 that he would call tomorrow when he got to "AZ" (presumably Arizona). Walczak never did. On June 4, 2024 Walczak finally followed up and asked for the current outstanding to begin scheduling payments. I sent over the current outstanding balances and Walczak said he would follow up shortly. Walczak never followed up nor sent funds for these services nor sent any reconciliation funds.

23. CMG would not have continued doing business with Princeton Place at any point had they known either Winchester, Williamson or Walczak and company would not end up paying for services rendered and the facility purchase was really going to be a fraudulent transfer.

24. CMG would have filed for a temporary restraining order and blocked the sale of Princeton Place to PureHealth had they known MCOA had effectively been running the organization since December 2022, and that Walczak was on both sides of the transaction as manager of MCOA and director of PureHealth and that there was no true intention of actually paying their obligations in full.

25. CMG is currently involved in a civil lawsuit with NE Health, Princeton Place, Winchester, and Williamson for the fraudulent transfer of Princeton Place, as the transaction was an insider sale designed to evade creditors. At the May 2, 2024 hearing, NE Health's lawyer indicated they were part of PureHealth and walked up to me directly and asked why we were suing them if we were doing business with them. I responded I was doing business with PureHealth not NE Health and asked for clarification and the lawyer tried to walk back the statement. Walczak called me mere hours after the hearing in the case and suggested we stop suing NE Health. I asked him if he was related in any way to NE Health, and he said he was not and had "no dog in the fight" in the civil lawsuit. I became aware NE Health's managing member and 99% owner was Walczak's mother (Elizabeth Fago) and the previous manager was controlled by his daughter (Abigail Walczak). Upon the filing of his mother's affidavit in late May 2024, revealing her large ownership stake in NE Health and finding documentation of her operating nursing homes with her son Walczak for decades, I investigated further and found a copy of Walczak's indictment which revealed that Walczak previously created and controlled an entity called NextEra Health (and noticed how it could be abbreviated to "NE Health") with his mother and daughter acting as nominees and/or partners and/or co-conspirators. In addition, that Walczak controlled a web of interconnected healthcare companies similar to the PureHealth web of interconnected healthcare companies. This further revealed that Walczak had willfully

misrepresented he had "no dog in the fight" and had also misrepresented he was not related to NE Health.

26. The information I have reviewed and through my experience dealing with these actors, leads me to believe PureHealth/OnPointe/Princeton Place/MCOA intended to cheat and defraud CMG out of these funds by also willfully not paying CMG and intentionally falsely obtained services that they did not intend to pay. Through my direct experience interacting with Walczak I believe Walczak is one of the architects of this fraud and theft and executed the plan while out on bail from his criminal case.

27. In the course of the lawsuit, I have learned that as part of the closing process of the sale between Princeton Place and PureHealth, a transfer of over $2 million dollars from Princeton Place to MCOA occurred.

28. On September 3rd, 2024 Winchester testified in New Mexico District Court that Management MCOA LLC received "Too much". Winchester also testified that the management company was responsible for paying the bills and that the buyer (Walczak) was related to MCOA. Winchester was questioned why he allowed funds from the sale to go MCOA instead of CMG and Winchester testified [he] "didn't know anything about that. I didn't have anything to do with it. It was handled from the sales proceeds, by the buyer." Winchester's testimony indicated that Walczak was the buyer's representative and that Winchester was aware of Walczak's MCOA email address and affiliation. NE Health offered no objections or alternative evidence to dispute this information despite Walczak's call on May 2, 2024 after the previous hearing revealing he was very aware of the civil lawsuit details.

29. Through reading the Federal Criminal Case against Walczak, I discovered red flags on where CMG's funds flowed. Walczak cited in Case: 9:23-cr-80024-KAM Document

26-1 filed July 18, 2024 on page 2 and page 14 that the $8,044,828.74 were funds from the Princeton Place "successful business deal". The second set of checks to the government on behalf of Walczak were dated February 2, 2024 immediately following the closing of the purchase of Princeton Place when CMG was supposed to receive their funds and the same date documents were filed in Bernalillo County on the sale. Through CMG's civil lawsuit, New Mexico courts have deemed the transfer (what Walczak described as a "successful business deal") was merely a fraudulent transfer with actual intent to defraud, delay and hinder CMG.

30. Walczak has cited shortages of funds from investors to me as one reason he has not made payments to CMG. Walczak has cited to the government he was waiting to receive investor funds meant for the successful business deal before he could make payment to the government (December 15, 2023 payment).

31. PureHealth and Princeton Place continuously moved the goal posts with CMG by promising payments by a certain date, and even going so far as asking for wire transfer instructions for payment, but never delivering payment from reconciliation funds and using the same techniques to avoid making payments on new services rendered.

32. An accounting order was granted to CMG at the May 2, 2024 hearing requiring "WW and its agents, officers, owners, and directors are ORDERED to provide an accounting to Plaintiff, of all of WW's assets." Based upon Walczak's representations of managing the facility it is believed he is/was at a minimum an agent and through his relation to NE Health, it is believed he knew about the order and continues to willfully violate this court order even today as no accounting has ever been provided to CMG by any of the ordered parties.

33. The relationship with Princeton Place and PureHealth was detrimental to CMG's business, as CMG lost millions of dollars in both up-front payments to staffed clinicians and

legal fees. Before the sale, approximately $2 million was owed by Princeton Place to CMG. After the sale to PureHealth, PureHealth through Walczak's actions used the moving goal posts of the reconciliation funds to willfully mislead CMG to induce and further extend approximately an additional $860,000 that is now owed and unpaid to CMG for services rendered. These amounts do not include the interest, economic and/or punitive damages caused (the judge in the civil case has already declared punitive damages will be awarded to CMG with the amount to be determined).

34. On December 6, 2024, I sent a final letter to Walczak to give him a final chance to do the right thing and make a payment after he took the plea deal and had previously represented to the government he always intended to pay highlighting that I thought he was willfully failing to pay another party and it was part of his fraudulent scheme.

35. Walczak responded via email on Monday December 16, 2024 stating, "Jon- traveling through Wednesday can we talk on Thursday… PAUL". Walczak never called on Thursday December 19, 2024 nor denied any of the allegations in the letter. Again, Walczak tried to move the goal post and requested to setup a call on Monday December 30th, 2024 at 11:00. He again, did not follow through and call at the time he requested. Walczak still to this day has never sent any reconciliation funds and only made three payments in March and April to CMG for services post fraudulent transfer.

36. I humbly request that Walczak be ordered to pay restitution to CMG for all funds owed.

37. I humbly request that all funds that Walczak cited as coming from the "successful deal" (the Princeton Place fraudulent transfer), that Walczak sent to the government be transferred to a constructive trust to be returned to their rightful owners and the government

collect against Walczak's personal assets or funds he previously stole and used to his benefit. Allowing Walczak to use and keep wrongfully obtained funds to pay off his tax fraud obligations would allow for his unjust enrichment at the cost of others as well as create moral hazard in society.

38. I hereby declare, certify, verify or state, under penalty of perjury, that the foregoing is true and correct.

_____
Signature

Jon Gallegos
Printed Name

1/6/2025
Date of Execution

**TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT**
Civil Practice & Remedies Code § 121.007

The State of Texas

County of _Travis_

Before me,

_Jenyfer Romero, Notary Public_
Name and Character of Notarizing Officer,
e.g., "John Smith, Notary Public"

on this day personally appeared

_Jonathan M Gallegos_
Name of Signer

☐ known to me
☐ proved to me on the oath of

_____
Name of Credible Witness

☑ proved to me through _____
_Driver License_
Description of Identity Card or Document

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this

_06_ day of _January_, _2025_
Day    Month    Year

_[signature]_
Signature of Notarizing Officer

JENYFER ROMERO
Notary ID #130833240
My Commission Expires
February 22, 2027

Place Notary Seal and/or Stamp Above

— OPTIONAL —

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Affidavit of Jon Gallegos_
Document Date: _01/06/25_    Number of Pages: _11_
Signer(s) Other Than Named Above: _____

©2020 National Notary Association

M1304-16 (11/20)